NORMAN MULLER, PETITIONER-RESPONDENT, v. ISLAND HEIGHTS VOLUNTEER FIRE COMPANY, RESPONDENT-APPELLANT.

Superior Court of New Jersey
Appellate Division

Argued September 26, 1966—Decided January 11, 1967.

Before Judges Conford, Foley and Leonard.

*Mr. William G. Freeman* argued the cause for appellant (*Messrs. Freeman and Freeman,* attorneys).

*Mr. Harold Lipsky* argued the cause for respondent.

The opinion of the court was delivered by

FOLEY, J. A. D. Petitioner, an active volunteer fireman, was granted compensation by the Division of Workmen's Compensation under *N. J. S. A.* 34:15–43. On appeal *de novo* the County Court affirmed and respondent appeals.

The essential facts are not in dispute. On the night of October 3, 1962 petitioner, in his capacity of a volunteer fireman, attended a regular monthly meeting of his fire company at the firehouse. In the course of the meeting he participated in a demonstration of the use of gas masks in fire fighting. Another activity in which he took part was the checking of fire trucks and equipment to see that they operated properly. At the meeting he was named "Chairman of the Visitation Committee" whose duties included calling upon ill or injured members of the fire company. Upon learning that a member had been admitted to a local hospital that afternoon, he stated that as soon as he went home he would telephone, find out the visiting hours and call upon the member.

Following the business meeting he and all members present set up tables and chairs for a bingo, which was operated to raise money for "our new firehouse." The work of the evening being concluded the men then went to the kitchen for refreshments. Thereafter, he left the firehouse and was driven to his home by the captain of the department, arriving at about 11 P. M. As he stepped from the automobile in front of his residence he stumbled on the curb and fell, sustaining a ruptured Achilles tendon which required surgical repair.

At the time of the accident the pertinent provisions of *N. J. S. A.* 34:15–43, *supra,* were:

"* * * each and every active volunteer fireman doing public fire duty * * * who may be injured in line of duty shall be compensated * * *.

As used in this section, the terms 'doing public fire duty' and 'who may be injured in line of duty,' as applied to active volunteer firemen, * * * shall be deemed to include participation in any authorized public drill, showing, exhibition, or parade of said volunteer firemen * * * either with or without their fire apparatus and to include also the rendering of assistance in case of fire * * * while such assistance

is being rendered and while going to and returning from the place in which it is rendered."

The questions presented are whether upon the facts above stated petitioner was doing public fire duty at the time of the accident and whether he was injured in line of such duty.

The particular problem of statutory construction involved has not previously been resolved by a reported decision in the courts of this State. In approaching it we are mindful of the oft-stated judicial policy of liberality in the construction of the Workmen's Compensation Act in order to accomplish the beneficent purposes of this social legislation. We note also that the legislative history of the Compensation Act, as applied to volunteer firemen, indicates, by continued expansion of the activities for which coverage has been afforded an increasingly liberal attitude on the part of the Legislature. The Legislature has generally reacted to a narrow judicial construction by modifying the statute to spell out the more liberal interpretation. See *Cuna v. Bd of Fire Com'rs, Avenel*, 42 *N. J.* 292, 299 (1964). In that case it was also said that the volunteer firemen and rescue workers, who risk life and limb to save others and their property without monetary reward, are entitled to an indulgent application of the law. See also *Volek v. Borough of Deal*, 83 *N. J. Super.* 58, 63 (*App. Div.* 1964).

We have no doubt that all of the activities in which petitioner engaged while at the firehouse were "in line of duty" and thus covered by the Compensation Act. As pointed out in *Cuna v. Bd. of Fire Com'rs, Avenel, supra,* when the Legislature stated, "[a]s used in this section, the terms 'doing public fire duty' and 'who may be injured in line of duty,' as applied to active volunteer firemen, * * * *shall be deemed to include* participation * * *, it did not intend to limit the activities to those thereafter enumerated but intended, as the words plainly indicate, to make sure that they would be held to include what was there expressed. It was not intended that 'shall * * * include' should exclude other activities."

Plainly, all of petitioner's activities while at the meeting bore a reasonable relationship to the particular activities enumerated in the statute and to petitioner's gratuitous service to the public.

Basically, petitioner contends that this being so, he should be covered until he reached his home in safety in light of the indulgent treatment which the law affords a volunteer fireman. We cannot agree with this thesis. In so deciding we are impressed by the fact that while the Legislature has expressly granted coverage for *going to and returning from* a place where assistance is rendered *in case of fire,* it has remained silent with respect to coverage for injuries sustained by a volunteer fireman while *going to and coming from* "an authorized public drill, showing, exhibition or parade." In view of the constant broadening of the base of coverage, as hereinabove noted, the conclusion appears to be inescapable that the legislative policy has made, and continues to make, a sharp distinction between going to and returning from a place where fire-fighting assistance was rendered and the lesser firemanic duties specifically set out in the statute. A call for fire-fighting duty projects an immediately emergent situation as to which the Legislature presumably felt the fireman ought to be covered from the moment he left for the scene until he returned. As to activities other than fire-fighting, we think that the legislative purpose was that their compensability should be adjudged by the ordinary concepts of "arising out of and in the course of the employment" which are applied to workmen's compensation cases generally.

So viewed, we think that petitioner's right of recovery depends upon whether he comes within the so-called "going and coming" rule, in which event he would not be entitled to a recovery or, *per contra,* whether the particular circumstances in question constituted an exception to the rule entitling him to compensation. The development of the "going and coming" doctrine and exceptions thereto is traced at length in *O'Brien v. First Camden Nat. Bank & Trust Co.,* 37 *N. J.* 158, 162–163 (1962). Our careful examination of

that opinion leads us to conclude that the rationale of an exception to the rule lies in the fact that at the time of the accident the employee is serving some incidental interest of the employer. Absent such service, compensation will not be granted if the employee is merely going to or returning from work. Compare *O'Brien v. First Camden Nat. Bank & Trust Co., supra,* 37 *N. J.,* at *p.* 163.

Petitioner argues that assuming (but not conceding) the applicability of the "going and coming rule" to a case involving a volunteer fireman, he was in fact rendering a service to the fire company. The theme of his contention is that since, in his capacity as chairman of the visitation committee, he had volunteered to telephone the hospital in which his ill comrade was confined, to ascertain visiting hours, he was entitled to coverage until he reached his home from which he intended to make the telephone call. We find this to be unrealistic. As we have pointed out, it was 11 P. M. when the accident occurred. Obviously, there were no visiting hours at the hospital at that time and, indeed, there is no indication that petitioner intended to visit the hospital that night even if permitted to do so. Nor is it likely in view of the lateness of the hour that petitioner would have sought information from the hospital that night. Far more probably, he would have waited at least until the day following to make an inquiry and perform his assigned function.

We are, therefore, obliged to conclude that the "going and coming" rule applies and that the facts do not justify engrafting an exception upon the rule. Consequently, the judgment is reversed with the direction that judgment be entered in favor of respondent.